three cases. We appreciate that you adjusted, I think, twice around our clerk's requests. So we know that can be an inconvenience, and you went from afternoon till midmorning, now all the way up till 9 a.m., and we're very grateful. We'll call the first case, 21-30753, Grace v. Hooper, and we'll hear from Mr. Walters. Good morning, Your Honors, and may it please the Court, Assistant Attorney General Christopher Walters on behalf of the State of Louisiana and on behalf of Appellant Warden Timothy Hooper. In addition, I have my co-counsel, Assistant Attorney General Grant Willis with us as well, who will be handling rebuttal. Your Honors, the District Court in this case got it wrong for three fundamental reasons. First, the District Court misidentified the clearly established law provision, set forth requirement in AEDPA, regarding the starting post of how we make a determination of whether a state court decision was reasonable or unreasonable application of Supreme Court precedent. Secondly, the District Court's analysis on the AEDPA question was fundamentally inconsistent with AEDPA, as the Supreme Court has explained, where the District Court failed to actually conduct the deferential analysis and rather instead simply went into a de novo review, came to her own conclusions as to the outcome of the Brady issue, and then simply said because she would have decided it differently, that the state court decision was unreasonable for that alone. And finally, the third fundamental reason is that even assuming that the petitioner could get past the AEDPA deferential standard and showed that the state court decision was unreasonable, the Supreme Court and this Court have clearly explained that even then the plaintiff must prevail on the merits of his claim after this Court conducts a de novo review. Now, of course, as the appellants, we would suggest that first and foremost that no de novo review is required by this Court because the District Court simply got it wrong as to the AEDPA analysis. So you're not saying there was a Richter error by the District Court because that's been a real tangle for the parties, the magistrate, the District Court. Am I correct? Below, you did urge that she should have looked through, but now to us, it's not so clear that you're telling me this is a look-through case. In terms of which decision that she is examining? I'm asking you to tell me whether you recommended to the District Court what you're recommending to us in terms of look-through or gap fill. In terms of the method of proceeding, I think we placed it in just that proceeding, as in you look to the AEDPA question and then, such that we wouldn't waive the issue or have it decided without our own briefing, then we would move to the de novo question of whether or not— Okay. It's not an easy area of law. I guess my question is, if you were back in front of the District Court and the District Court's doing what you ask, suggest that 2254 makes it do, deferring to the state courts, in this case, is the Supreme Court's summary one-sentence unexplained application of Brady the type of ruling that we would look through using Wilson? So the unreasonable application of Kyle's is actually what was done by the Intermediate Court. Yes or no look-through? So, at the end of the day, I believe that we, in the lower court, we said that the Louisiana Supreme Court decision, the one-sentence decision, was the last reason decision that the court would look to. However, to the extent that that one-sentence decision simply stating that the petitioner to show a Brady violation, to the extent that that was not accompanied by additional reasons, we also looked to the Louisiana Fifth Circuit decision immediately prior to that, which did provide reasons. Okay. Let's say you win that there was legal error, and it's back down to do it right. I think what you're saying is we win either way, whether we're looking at that one-sentence and asking could that be reasonable, or if you look through. But you ultimately, I think any court, us in the district court, will want the government's position. Which is it? Because Richter was harsh. The spirit of Wilson would suggest you look through, I think. I thought that's what you told her originally, but I thought to us you're saying no. Can you just clarify? I know you think you win both ways, but which would be proper to do? Look through or make grace gap fill? Well, I don't know that either way is, I guess, technically preferable, if you will, because at the end of the day, it really doesn't matter in terms of the decision that has to be made as to the state court decision. Ultimately is did they reasonably apply Kyle's? Could any fair-minded jurist conclude that with this impeachment, even with the impeachment, the verdict is sound? Is that basically the inquiry? That's correct. That's correct. And not only Kyle's, but any other Supreme Court precedent on the issue of Brady. And that's fundamentally, that's one of our first issues with the district court decision was that there was very little discussion in the district court opinion about the actual clearly established law to be applied here. You know, it's kind of like a baseball game where you've got to set the foul lines. You know, you've got to determine what is . . . I think you've got some strong points. I guess though I'm going to see, are you comfortable answering this question? If the district court had rigorously looked at any of the state court opinions or rigorously applied Kyle's and Supreme Court only law, can you point to any Supreme Court law that would say that this type of impeachment, right, the girlfriend saying the witness that the government puts on to accuse Grace of shooting actually had seen the government's very witness as the one with the gun to the head of the victim. How could that possibly not shake the confidence in putting Grace in jail for life when it lead witness was the one with the gun over his head? So I would answer that in two ways. First, I would say that that question in and of itself I think presumes we are already going to a de novo review because we are not taking the reasons and the factual findings that the state . . . I fully respect that. I guess I'm asking you, is there any law you know anywhere giving edpedeference that would ever say this type of evidence the government's got in the grand jury, the girlfriend who's accusing the person that ends up being the government's lead witness, she says he's the one who had the gun. Can you think of even with massive deference any court that wouldn't say that would shake our confidence? Well, and this is, like I say, as it goes back to the determination of the facts and the determination of the law. Here we would say that the district court actually got it wrong as to the factual findings. And if we go back to look to the Louisiana Fifth Circuit decision that was a more reasoned decision, at the end of the day they provided multiple reasons about why Michelle Temple, who was the girlfriend of the victim, about why her grand jury statements were not material and not relevant because, one, she did not see the shooter, she did not see the shooting at all based upon her vantage point of where she was, and two, she had already given the vast majority of these statements in a pretrial, in a day-of, investigatory, recorded statement. The vast majority of what she said at trial was contained in that and was in the possession of the defense. Did Hudson or Moses, the two government witnesses, does the record reflect that they were even ever convicted of anything? As relates to this case, no, no. Because that, according to the record, Moses and Hudson were never charged in this case. Now the only question as to, there was no question as to whether Moses, or at least no insinuation as to whether Sherman Moses, the lookout, if you will, had any criminal liability, certainly maybe some could be conferred or assumed. He had an extensive criminal record, just out of prison, and he'd been on drugs. So he's one eyewitness. The only other one is Hudson, and Hudson is the one that Temple, in the grand jury, said, I saw him with a gun to the head. Except that she didn't say that in the grand jury. She said at grand jury that she saw the shooter and that the shooter was Jesse Grace. But she picked Hudson out. She did not pick Hudson out. And that's the whole thing. But I thought she described somebody who looked like Hudson. She did describe someone that looked like Hudson. And not somebody who looked like Grace. And the other point of that is that that same description that she gave in grand jury is the same description she gave in her day of investigatory recorded interview that the defense had. So when we talk about Brady, certainly the state has conceded that the grand jury testimony was withheld. And it's impeaching. To some extent. But we have to actually look at what that information is. There's a difference between. But your point, and this is a soft question to you, is you don't need to be doing any of this, right? Because it's not your job to do it in the first instance in federal court. That's correct. So back to your direct question as to Supreme Court precedent. It's actually not on the state. It's actually on the petitioner to identify Supreme Court precedent that clearly and unequivocally says this is not, this state court decision is so unreasonable that no judge whatsoever in the land could possibly find the state court decision consistent with Supreme Court decision. So knowing that the state trial judge who would know this case even more intimately than Judge Malazzo also thought it was material, I mean it. Well it certainly shows that there's, that the, it certainly shows that the decision on Brady itself is open to reasonable debate. And that's all we have to get to. We don't have to get to convincing you of Brady, although I think we've done so in our briefing that. The magistrate felt it wasn't material, correct? Not just that state court judges were reasonable, but in fact that the state court was right. That's correct. And that, that I guess would be your position. And the magistrate judge. That's correct. The magistrate judge in a lengthy, detailed opinion went through the correct analysis, looked at here's what the state court did. Here's what the state court held. Here's where Supreme Court, here's the clearly established law of the Supreme Court precedent relevant to this, and said there is no Supreme Court precedent that unequivocally holds in this case, that applies to this case such that no reasonable, fair-minded jurist in the land could possibly find the way the state courts did here. I mean this decision was split all the way up. It was split at the Louisiana Fifth Circuit. It was split at the Louisiana Supreme Court, although the state prevailed. But nonetheless, the question is not whether or not the state court got it right. The question is whether or not the state court's decision was reasonable. Hard to decipher whether it was reasonable at the Supreme Court level. It's a one sentence. Well, that's correct. And so to the extent that we need to delve further into it, we look to the Louisiana Fifth Circuit decision that had the reason. So I guess the question back to what Judge Higginson had just started out the argument with, if the Louisiana Supreme Court one sentence decision is the last reasoned decision, how much are we permitted to look through to what the appellate court did or the state trial court did? I mean we wouldn't look to the state trial court, but I mean, in other words, is there a difference between looking through and gap filling? Can we do the latter if we don't do the former? And I think that gets to some of what Judge Higginson was asking as well, is I don't think that there's a large difference in terms of the ultimate analysis. At the end of the day, the state court decision is presumed to be reasonable. And was the district court then therefore reasonable to say, well, here's what the Supreme Court said, wasn't material, didn't give any reasons, so I'm going to fill in and give reasons myself. In other words, that's kind of what the district, I mean, I guess the district court said something about the, a little bit about how the court got to its conclusions or it kind of surmised, but it didn't grapple with the Louisiana Court of Appeals, but would it have to if the state Supreme Court was the last reasoned decision? Well, I think it would, because at the end of the day, you have to determine what that decision was based upon, the reasons and factual findings that were necessarily made. And rather than grapple with those as it were, the district court simply went in and re-looked at the record, made her own decision as to the Brady issue, and then... The district court may have answered the wrong question. In other words, the district court didn't say, well, could reasonable jurists disagree or reach different conclusions? Is the court, state court decision reasonable? Or can we say it's unreasonable just per se? There's no reasonable way they could have gotten there. But instead, it went kind of through a de novo analysis of the evidence and all that and kind of did its own... And then on top of that and compounding that error is that the district court here relied heavily on confrontation clause cases from the Supreme Court and from this court in order to make her clearly establish law or determine her clearly establish law. But that's simply inappropriate because there are no Supreme Court precedent cases that apply the confrontation clause here. Just as this court was seen in Langley v. Prince in the en banc decision where it explained an analogous situation about courtroom conduct and said that a case in which it said that an inmate in prison garb was unconstitutional and violated his rights did not clearly establish whether or not a witness, or excuse me, a family member sitting in the witness area of the trial wearing a t-shirt, that did not clearly establish it. So what we have to do is you have to look down... My apologies, Your Honor. Thank you, Your Honor. Mr. Elliott? Oh, I'm sorry. I'm looking at the second case. Yes, of course. Regarding the state's first argument that the district court failed to identify clearly established Supreme Court law, the state seems to be making an argument more of citation than application. In other words, their chief complaint is that the court didn't cite all the right cases. Well, their complaint is it doesn't cite Kiles at all, and Kiles is the touchstone. That's not just a citation issue. I mean, I'm flattered that the district court cites us, but we've had a lot of upflux as to applying materiality. Understandably, it's so fact-rich, but you pretty much... It's hard to imagine when you're told by statute to cite controlling law that you don't cite Kiles. What's important in the end, we think, is not that the district court cited the case. It's whether or not the claim involves a clearly established federal law. In this case, it does. The state says that Brady's too broad, and Brady doesn't cite, doesn't define materiality. But Kiles does. Right. But the district court applies the materiality test, and by the way, the materiality test is also stated in Weary, and she did cite Weary. Fundamentally, though, would you agree with me? I mean, Supreme Court and the statute are crystal clear that you've got to give epideference. You can't fall into the trap of saying, this looks awful to me. It meets Kiles. It's really hard to look at this state court record and say no fair-minded jurist could say, with this impeachment, I still think the verdict is sound. I don't see that the district court gave any state deference to that state court, and multiple judges in the state system said that. Well, that gets to the question of what decision gets the deference. Well, I'm saying at the moment, you heard me, assume either decision. The Supreme Court, Intermediate Court, no one was, as you just argued a second ago, everyone knew this is about materiality. Yes. And we know at the Intermediate Court, the state courts really studied and wrestled with it, so much so that the Intermediate Court said the trial court abused its discretion. So this was very thoughtfully looked at, albeit evenly divided. That sounds like fair-minded jurists disagree. I disagree with you. You disagree that, where, she only, Judge Malazzo only gave the six pages of analysis. Am I correct that she only gives the state courts one paragraph of critique? Yes. Well, let me first get to the look-through issue, and I think I... Now I don't want to let you get there, because I agree that's difficult. We'll get there if you have time. My question is, am I right or wrong that in this AEDPA grant of habeas, a federal district court gave the state courts one paragraph of critique? Yes or no? Yes. And I'll let you explain. You know, because the state cited it, even though you didn't respond to it, the Supreme Court reversed the Ninth Circuit in the case Shin v., what is it, Kayer? In one paragraph saying, how could you not understand? You've got to delve into what the state courts did. If you're to prevail, won't we be reversed that quickly? Yeah. I agree, but of course... You agree we would be reversed that quickly if you prevail? Well, I'm sorry, if under what condition? If we affirm Judge Malazzo's one paragraph critique, the Supreme Court will say, who gave any deference to these state court judges? No, I don't concede that. Okay. Go ahead. Well, first of all, what Judge Malazzo did was she read the, I cannot remember the name of the case, that said that this is a sufficient ruling such that we don't look through. But the case is written. Right. And what that required her to do, and you know, the state has argued in its reply brief that what we're saying is when the state court's decision is very short, analysis-free and very terse, that it deserves less deference. Well, I would argue that, first of all, we didn't make that argument, but it... Right, because you urged look-through. Well, yes, but also, we did argue for the look-through. But you know, when the case has no analysis, the burden is even, I would argue, is even greater on the petitioner because now he has to show that the result couldn't result from any reasonable application of the law. Right. But instead, what she did was she felt, okay, this frees me to do a de novo materialgna analysis. No. I think that what she did was she came to the conclusion, the only way you can, if you can't look through, the only thing you can do is review the claim and say that no reasonable, there's no way that this could be affirmed under reasonable application of law. And that's all she did. She said it was objectively reasonable. Yes. Okay. I see. So you're saying deciding the Wilson-Richter difficulty is integral to your argument here. So even though you urged below that they look through, you're saying no, now, to us, she didn't. The only reasonable or unreasonable thing was one sentence. That allowed her to do it all herself. She didn't have to talk about the intermediate court. Is that basically what your argument is? Right. However, I don't mind going down the road with the state on the intermediate court. An analysis of the intermediate court's decision only emphasizes that this claim can't be affirmed by any reasonable application of the law. The court made every kind of logical, factual, and legal error in that decision. It misapplied, not only did it not apply Brady reasonably, it misapplied law. It said things like, you know, the evidence that Hudson's relationship with the state as a suspect is not relevant to impeachment because there's no evidence of a deal. Well, that's contrary to Davis v. Alaska. It made several factual unreasonable determinations of fact, like, well, the reason why Judge, I'm sorry, Sergeant Snow didn't charge Hudson because it was a mere oversight. I mean, is that, can that happen? Okay, these are rhetorical questions, but this is what Judge Malazzo's job was to do. Right. You're saying they're legal and factual errors that impregnate the state court reasoned opinion, but we don't have that in front of us. These are your propositions to They are, but if, so if this court decides that she should have looked through, Judge, the judge should have looked through, is that not, is that not a task this court can perform based on the record? Because we would ask that, we think that you can look at that decision in light of this record and conclude as we think you should, that that decision is not a But again, I think you've got to deal with the fact that if the standard is that, you know, no, no reasonable jurist would disagree, you've got reasonable jurist up and down the line disagreeing, and then you've got the district court that doesn't grapple with any of that disagreement. Well, first of all, as to, if, if just looking at decisions that are contrary or conflict with one another, if that's all you need to do to show reasonable minds could disagree with, then there's never going to be a Well, no, the Louisiana court of appeals grappled with why the evidence wasn't material. Yes. And they talked about the other source. They got it wrong on every, well, yes, but under deference, even if they get it wrong, it doesn't mean that it is reversible. Well, there's wrong. And then there's really wrong, right? Because at some point you have unreasonable. Okay. And, you know, yes, but debatable isn't unreasonable under deference. Again, you know, at some point people are debating things unreasonably. And, and, and that's what we've insist has happened in this case. You, getting to the merits as judge, you, you seem to, you recognize that Michelle Temple said to the grand jury, I saw who shot him. She tells the jury, I didn't see who shot him. She says, I picked him out of a lineup. She tells the jury, I didn't pick him out of a lineup. She says, there's the man I saw shoot him standing over him with a gun to his head. Um, that man is the government's lead accusing unquestionably. And did he get convicted of anything? No, didn't charge him with anything. Um, so we were doing DeNovo. So you're saying both government witnesses suppressed that actually the lead accuser is the one who the victim's girlfriend said was the shooter. The one who's five foot five, 140, 150 pounds with a fade haircut, wearing blue dickies. What if their response is, well, Moses was there too. And he had none of that. Temple didn't implicate him at all. Moses is another eyewitness implicating grace. Right. But so this, this impeachment wouldn't have gone to his testimony. No, but, but when you're dealing with, with the only evidence you is two witnesses that have serious credibility issues that if that Michelle, we're not even talking about Sergeant Snow's grand jury, but if, if, if that isn't enough, when you have evidence like that to say no reasonable application, Brady can allow this conviction to stand. I don't know what can, um, you know, the, the, in other words, this, the jury, the, the, the case before the jury was so weak to begin with, and it wasn't, and that was without them even knowing that the state had already had their two witnesses, their, their two big witnesses lie to the jury. Remind me, did you present his arguments, these very arguments at the intermediate Louisiana court were you his attorney? I was not his attorney. And you didn't write the cert petition to Louisiana Supreme court. I did not. But so anyway, just, just these two witnesses without knowing that they lied to the jury about whether they had said, told someone else, they never saw the crime without knowing that the state was allowed to fool the jury into believing that Mr. Hudson got up in the morning, drove to the courtroom, gave testimony, went back home. And in fact, he was in a jail cell with charges hanging over his head by the same prosecutors who were prosecuting Jesse Grace. Um, the state has gotten away with blatant violations of napkin, blatant violations of Davis. This court should not let it get away with blatant violation of Brady. Sounds like you're ready to finish. Yes. That's a high note. Yeah. Okay. Thank you. Thank you. Morning, your honors. Um, uh, we would again, just reiterate that the district court, uh, failed to do a pro give proper deference to Louisiana Supreme court, which rejected, uh, grace's Brady claim. Am I right? That's legal error and consistent with the Supreme court case you cited. That's the care. That's right. And we could fall into the same error. We wouldn't be the ones doing this analysis in the first instance, would we? No, no, your honor. And, and, you know, I think it's important to focus that this is, this is a case regarding a Brady, an alleged Brady violation. And, and if it, if it were ever to get to that point, you'd have to look at what the evidence was. That was a Brady that they claimed to be a Brady violation. Again, all, almost all of the information that has been discussed was provided in the, uh, pretrial or the, the statements that were, I ask you the same question. Judge Wilson asked your colleague, because the answer your colleague was, I think it would, it being the district court have to grapple with the intermediate courts analysis. Do you agree with that? Of course I agree with my colleague. Okay. And I'm not trying to trap you. That's my read of the spirit of Wilson, the case, not the judge. Um, in other words, a district court would have to look through that's I think what you told the district court below. That's right. And, and I know you're preserving your argument. You went either way, but I, I just, the clarity of the legal position, you both say in this ad for 20 to 54, they should, they, the district court should have looked through to the reasoned analysis. I don't think the outcome would be different either way, but, but legally speaking, I think that that would be fine. I agree that that is the spirit of it and, and it would not, it would not affect the outcome here. Um, now the, the issue is, is that there was absolutely no deference given to the state court. And these, basically the fact that we had such differing opinions throughout this case, uh, just only goes to prove that there, there is clearly reasonable jurists could come to different conclusions on this. Uh, here's our question for you. When you say reasonable jurists could come to different conclusions, it's as to materiality, right? That's correct. But material to what? In other words, it, Grace ends up getting mandatory life without possibility of parole as a second degree murderer, correct? That's right. But if this evidence could be used by opposing counsel to even shift it to third degree murder, some lesser sentence, then it's material under Kyle's. It isn't, it has to be material. You're acquitted, you walk free. It's just got to be enough that a jury might not have convicted or gotten a mandatory sense for life, correct? That's correct. But I think under Louisiana law, second degree murder and the elements that would be proven, um, it's clear that this, that would not affect that. It does not material as to, as to, uh, sentencing or punishment because the case is so very strong as to the guilt of Grace. There is, I'm not with you there, but it may not be my position, right? I mean, my gosh, the government's got grand jury testimony. They don't disclose it. And, and Temple may have implicated the government's lead accuser as being the actual killer. I would take issue with being the lead accuser. I do think that Moses is, is, is the lead as far as he was the first one to give a statement. Uh, they had it. It was, it put, it was, you know, consistent that he was high on drugs at the time. He, he did admit that he had smoked marijuana the day of. And I don't think that it makes a difference because the physical evidence, the ballistics, all of that were, were right in line with what Moses said and supported by what Hudson said. And, and I don't believe that Temple, uh, pointed the finger at Hudson. I believe that she described someone that could be similar to Hudson, but she also said there were many people out there that had the similar, a similar, you know, appearance and a similar build stature, all of that. I don't know about that. I mean, there, there were some pretty strong matchups, but again, we're not talking about whether what, what we would think on DeNovo review, we're talking about deference to the Louisiana court, whichever one it is. That's right, Your Honor. And that's, I would agree with this in this case, given where we're at in this case and the facts of this case, the deference should have been given to the state court and we shouldn't even have to go there. Um, however, that said, we, we remand this, or do we render it? Well, we would ask the court to, to, uh, render a judgment and to dismiss the, um, to, you know, there's no reason to send it back to the state court. I mean, to the, to the district court, I'm sorry, but if you, if you, but your first, that's why I asked you. That's what I thought. I said, we don't do this. And you said, I agree. Right, right. Your Honor. And that's what we've asked for in this. I do agree that, you know, sending it back and having it done the correct way would be, also be a very proper, um, outcome. Thank you very much. Thank you, Your Honor. Yes.